IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:05-CR-299-FL
NO. 5:07-CV-307-FL

| | |
|---|---|
| RONALD MAYBERRY, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. )<br>) | ORDER |

This matter is before the court on petitioner's motion to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255 (DE # 57), filed August 14, 2007. Government responded on November 14, 2007, and petitioner replied on November 29, 2007. The court held an evidentiary hearing on March 31, 2008. In this posture, the issues raised are ripe for ruling. Based upon the evidence presented, the court GRANTS petitioner's motion, and ORDERS that petitioner shall have thirty (30) days from the date of entry of this order to file an appeal from his original sentence.

STATEMENT OF THE CASE

In an indictment filed November 17, 2005, petitioner was charged with being a felon in possession of a handgun in violation of 18 U.S.C. §§ 922(g)(1) and 924. On June 8, 2006, a federal jury found petitioner guilty of the crime charged, and on January 29, 2007, petitioner was sentenced to a thirty-six (36) month term of imprisonment, followed by three years of supervised release.

Petitioner filed a motion to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255 ("§ 2255") on August 14, 2007, wherein he alleged that his counsel of record, Fredrick Russell Pierce ("Pierce"), failed to file a requested notice of appeal. The government responded on

November 14, 2007, and petitioner replied on November 29, 2007, requesting an evidentiary hearing on the issue of whether petitioner had requested that Pierce file a notice of appeal. Evidentiary hearing was held in New Bern, North Carolina on March 31, 2008, with Rudolph A. Ashton representing petitioner, and Steve Matheny representing the government.

## FINDINGS OF FACT

Petitioner was charged with being a felon in possession of a handgun in violation of 18 U.S.C. §§ 922(g)(1) and 924, in an indictment returned November 17, 2005. Defendant was arrested December 7, 2005. Notice of appearance on behalf of defendant was filed on December 14, 2005, by James E. Todd, Jr. of the Federal Public Defender's Office. However, petitioner and his wife, Bonita Mayberry, hired Pierce, who had previously represented petitioner on a firearm charge that petitioner faced in Wake County, North Carolina. Pierce filed his notice of attorney appearance on January 5, 2006, and thereafter the court allowed the motion to withdraw on behalf of the Federal Public Defender.

After petitioner's arrest but before the end of December 2005, petitioner discussed the federal charge with Pierce at the Wake County Jail, where petitioner was being held. Petitioner and Pierce had no further direct contact from this meeting forward until petitioner's arraignment on April 10, 2006, before United States Magistrate Judge David W. Daniel in Greenville, North Carolina. However, Pierce and petitioner's wife met at Pierce's office where they discussed the charge against her husband, possible sentences, and the possibility of appeal. At arraignment on April 10, 2006, Pierce consulted with petitioner regarding a proposed plea bargain, but petitioner declined to accept the offer.

After arraignment, petitioner did not meet with Pierce in person again until the day of the trial, June 8, 2006, on which date Pierce visited petitioner in jail. Prior to trial, petitioner's wife made several attempts to speak with Pierce, and though he returned some of her phone calls, she found it difficult to arrange a personal meeting with the attorney. In the courtroom on the day of trial, prior to the start of proceedings, petitioner asked Pierce whether he would file an appeal in the event that a guilty verdict was returned. Petitioner testified that in response to this question Pierce asked petitioner if he had prayed the night before, and when petitioner responded in the affirmative, Pierce reassured him that he had nothing to worry about. After the jury returned a guilty verdict, Pierce spoke with petitioner's wife in the parking lot outside of the courthouse at New Bern. Petitioner's wife asked what would happen next, to which Pierce responded that they would have to wait until after sentencing and then he would file an appeal if necessary.

A meeting between petitioner, Pierce, and a federal probation officer took place on August 11, 2006, in preface to the making of the presentence report. Other than this meeting, petitioner had no direct contact with Pierce until the date of his scheduled sentencing,[1] November 29, 2006. On September 25, 2006, the court received a letter from petitioner requesting appointment of new counsel based upon Pierce's failure to communicate with him, and a perceived conflict of interest. A three-way phone conversation took place between petitioner, petitioner's wife, and Pierce on November 27, 2006, during which the presentence report was addressed, and petitioner discussed the possibility of appeal. On November 29, 2006, the court took up the issue of petitioner's correspondence, treating it as a motion for appointment of new counsel, which the court denied. The

---

[1] Sentencing was originally scheduled for the week of September 18, 2006, but was continued upon motion from petitioner, which was granted by order dated August 21, 2006.

3

court then continued the sentencing upon a finding that provisions of Rule 32 of the Federal Rules of Criminal Procedure had not been complied with due to Pierce's failure to adequately confer with petitioner regarding the presentence report, and petitioner's lack of opportunity to read the report and any addendum thereto. See Fed. R. Crim. P. 32(i)(1) (requiring that "the defendant and defendant's attorney have read and discussed the presentence report and any addendum to the report"). Sometime thereafter, Pierce and petitioner met in person in Pitt County, North Carolina to review and discuss the presentence report.

Petitioner returned to Greenville, North Carolina for final sentencing on January 29, 2007. At this sentencing the court considered the factual objections and objections to the guideline application that Pierce had raised with respect to the presentence report, resulting in a reduction from a guideline range of forty-one (41) to fifty-one (51) months imprisonment to a guideline range of thirty-three (33) to forty-one (41) months imprisonment. Petitioner received a sentence of thirty-six (36) months imprisonment followed by three years of supervised release. Upon receiving his sentence petitioner was orally advised of his appellate rights as required by Rule 32(j) of the Federal Rules of Criminal Procedure. After sentencing Pierce spoke to petitioner, who expressed his dissatisfaction with the three years of supervised release. Petitioner did not specifically request an appeal at this time, and Pierce neither asked petitioner if he wanted to appeal, nor consulted with petitioner regarding appeal in any way. After sentencing, Pierce spoke with petitioner's wife, telling her that there was some paperwork that needed to be filed within ten days in order to appeal. In the weeks and months after sentencing, petitioner's wife made repeated attempts to speak with Pierce but was unable to reach him.

4

Petitioner sent a certified letter to Pierce in or around April 2007, inquiring about the status of his appeal, but he received no response. Petitioner also sent a letter to the clerk of court requesting a docket sheet. This docket sheet revealed to petitioner for the first time that an appeal had not been filed on his behalf, prompting him to file the petition under § 2255 that the court takes up today.

At the evidentiary hearing, Pierce specifically testified that he did not counsel petitioner regarding his appeal rights at sentencing or any time thereafter, and conceded that with the benefit of hindsight he probably should have.

## CONCLUSIONS OF LAW

The burden of proof in a civil collateral attack rests with the petitioner, who must establish a denial of constitutional rights by a preponderance of the evidence. Johnson v. Zerbst, 304 U.S. 458, 468 (1938); Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967); Miller v. United States, 261 F.2d 546 (4th Cir. 1958).

Generally speaking, claims of ineffective assistance of counsel are evaluated through the two-pronged analysis provided by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). The petitioner must first establish that counsel's acts or omissions fell outside of the range of reasonably competent assistance. Id. at 690. Once the petitioner has established that counsel's performance was deficient, he or she must then satisfy the second prong by demonstrating that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The Fourth Circuit has held that an attorney's failure to file notice of appeal despite being explicitly instructed to do so by the client constitutes ineffective

assistance of counsel regardless of the likelihood of success on appeal. See United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993).

In the instant matter, petitioner did not expressly request that Pierce file a notice of appeal on his behalf, making the Peak analysis inapposite. The situation at bar is governed instead by Roe v. Flores-Ortega, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000). Flores-Ortega dealt with the situation where an attorney failed to appeal, but the defendant never clearly conveyed his desire that an appeal be filed on his behalf. The Court held that the Strickland analysis still applies in such a situation, that the petitioner has the burden of establishing that his counsel's performance fell short of the objective reasonableness standard, and that the petitioner was prejudiced by this deficient performance. Flores-Ortega, 528 U.S. at 483-84. Rejecting a rule that would make failure to consult with a client *per se* ineffective assistance of counsel, the Court instead held that counsel has a constitutional duty to consult with the defendant about an appeal "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 479-80.

The Court defined "consult" to entail "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id. at 471. The Fourth Circuit has held that such consultation should occur after sentencing. See United States v. Witherspoon, 231 F.3d 923, 927, n. 4 (4th Cir. 2000); see also Miller v. United States, 150 F. Supp.2d 871, 880 (E.D.N.C. 2001) (interpreting Witherspoon to strongly suggest that advice about appeal should be given after sentencing). Pierce testified that he did not consult petitioner with respect to his appeal rights on the day that he was sentenced, nor any

6

time thereafter. Accordingly, it is clear that Pierce failed to satisfy his obligation to consult with his client about appeal rights after sentencing.

Having decided that Pierce failed to adequately consult with petitioner, the court must next determine whether such a duty of consultation was incumbent upon Pierce, either because a rational defendant would want to appeal, or because this particular defendant reasonably demonstrated to counsel an interest in appealing. Flores-Ortega, 528 U.S. at 479-80. In providing this framework, the Supreme Court advised that "[w]e expect the courts evaluating the reasonableness of counsel's performance using the inquiry we have described will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal." Id. at 481. The court is instructed to view the totality of the circumstances and consider all the information that counsel knew or should have known. Id. at 480. One highly probative factor is whether the conviction followed a guilty plea or a trial, because a guilty plea "reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Id.

In the instant matter, petitioner was found guilty after a trial, a highly relevant factor which militates in favor of the conclusion that Pierce reasonably knew that petitioner wanted to appeal. In addition, on multiple occasions prior to sentencing, petitioner and his wife spoke to Pierce about filing a notice of appeal. Before the trial even started, petitioner asked Pierce whether they would appeal if they lost the trial. After the jury returned a guilty verdict petitioner's wife inquired into the availability of an appeal and Pierce informed her that the appeal could not be filed until after sentencing. The issue of appeal was also raised during the three-way phone conversation between petitioner, his wife, and Pierce, which occurred prior to sentencing. After sentencing, Pierce spoke to petitioner's wife, informing her that there was some paperwork that needed to be submitted within

ten days of sentencing in order to appeal. Further, Pierce testified that upon hearing his sentence, petitioner was obviously very distraught and expressed great dissatisfaction with the terms of his punishment, a further manifestation of a desire to appeal. Thus, the court finds that petitioner reasonably demonstrated a desire to appeal.

The final step of the Flores-Ortega inquiry requires petitioner to demonstrate prejudice by demonstrating that there is a reasonable probability that, but for counsel's deficient failure to consult with him regarding appeal, he would have timely filed a notice of appeal. 528 U.S. at 483. In the instant matter, as previously described, petitioner and petitioner's wife inquired about appeal on multiple occasions prior to sentencing. In addition, as Pierce testified, petitioner was extremely dissatisfied with the sentence that he received, suggesting that petitioner would have appealed if he had been adequately consulted by his counsel. Further, petitioner's wife testified that she repeatedly called Pierce in the weeks and months after sentencing, hoping to speak with him about appeal. Finally, petitioner sent a certified letter to Pierce on or around April 2007 wherein he inquired about the status of his appeal, and also sent a letter to the clerk of court pursuant to the same intention. Soon after the clerk of court responded with information that revealed to petitioner that Pierce never filed a notice of appeal on his behalf, petitioner timely brought this § 2255 claim, filing it on August 14, 2007. Accordingly, petitioner has satisfied his burden of demonstrating that if not for the deficient performance of his counsel he would have timely filed an appeal.

8

CONCLUSION

In accordance with the foregoing, the court GRANTS petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Petitioner shall have thirty (30) days from the filing of this order to file an appeal from his original sentence.

SO ORDERED, this the 24th day of April, 2008.

LOUISE W. FLANAGAN
Chief United States District Court Judge